FILED
2022 Mar-03 PM 02:53
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ROBERT ALLEN JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. 5:21-cv-72-LCB** |
| ) | |
| **KILOLO KIJAKAZI,** ) | |
| **ACTINGCOMMISSIONER OF** ) | |
| **SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION & ORDER

Robert Allen Johnson filed this action in accordance with 42 USC § 405(g) and § 1383(a)(3), seeking review of the Social Security Commissioner's decision denying him Disability Insurance and Disability Insurance Benefits. (Doc. 1 at 1). Johnson contends, among other things, that Administrative Law Judge John R. Daughtry wrongly concluded that he has the residual functional capacity to do medium work with some limitations. On review of the briefs and record, the Court disagrees. Judge Daughtry's decision is **AFFIRMED**, and Johnson's request for relief is **DENIED**.

**I.  BACKGROUND**

Johnson applied for Disability Insurance and Disability Insurance Benefits on December 7, 2018. (Doc. 6-3 at 19).[1] On March 19th the next year, his application was denied. (*Id; see also* Doc. 6-5 at 7). Johnson submitted a written request for a hearing before an ALJ on April 10, 2019. He received a telephonic hearing on June 2, 2020. (Doc. 6-5 at 34[2]). Johnson, his counsel, and vocational expert Dr. Sabrina Singleton appeared at the hearing. *Id*. Johnson received Judge Daughtry's unfavorable decision on June 17, 2020. (Doc. 6-3 at 16). He filed a request for review with the Social Security Appeals Council on June 26, 2020. (Doc. 6-5 at 72). The Council denied Johnson's petition on November 19, 2020. (Doc. 6-3 at 2).

**A. Hearing Testimony**

The record developed from Johnson's treatment records and all testimony at the hearing is as follows. Johnson has a high school education and specialized training in welding. (Doc. 6-7 at 7). For many years, he worked as a manager at International Paper. (Doc. 6-3 at 50). He lost that job when International Paper's plant closed in 2014. *Id*. at 53. After that, he briefly worked as a pool installer. (Doc.

---

[1] Johnson adopted, without objection, Judge Daughtry's recitation of his age, education, work experience, and the summary of his testimony. (*See* Doc. 8 at 3–4).

[2] Judge Daughtry conducted Johnson's hearing in this manner "due to the extraordinary circumstance presented by the Coronavirus Disease 2019 (COVID-19) Pandemic." (Doc. 6-3 at 19). Johnson hasn't challenged the nature of his hearing on appeal.

2

6-3 at 53). But he hasn't worked since August 30, 2018, due to the conditions that he alleges make him disabled. (Doc. 6-7 at 6).

Johnson alleges a disability onset date of August 7, 2017. (Doc. 6-6 at 4). He claims that his diabetes, cognitive difficulties, problems with balance and dizziness, and blackouts keep him from working. (Doc. 6-7 at 6). Johnson has had diabetes since he was twenty-eight. (Doc. 6-3 at 52). At his administrative hearing, he testified that he used an insulin pump to treat his diabetes when he worked at International Paper. (Doc. 6-3 at 53). Now, he manually checks his sugar twice a day and injects insulin once a day. (Doc. 6-3 at 60).

Johnson testified that he has trouble managing his blood sugar; it "bounces around" on him. (Doc. 6-3 at 51–52). When his sugar is low or drops, he feels disoriented, and he feels that he can't do anything. He insists that this latter feeling–that he can't do anything–persists the rest of the day even after his sugar comes into balance. (Doc. 6-3 at 59). He testified that his blood sugar can drop this way between two to five times a week, but often it drops two to three times a week. *Id.*

Johnson said that his diabetes prevents him from doing normal things. For instance, while Johnson testified that he drives forty to fifty miles per week or every two weeks, his vision blurs if his sugar is off. (Doc. 6-3 at 46). Johnson also testified that he cuts the grass with a push lawnmower when the temperature is high and his blood sugar is balanced. (Doc. 6-3 at 55). But, if conditions aren't ideal, it might

3

take him two or three days to finish mowing his lawn. *Id*. Johnson also goes to the grocery store with his wife. *Id*. Occasionally, he tries to help around the house by mopping, sweeping, hanging light bulbs, changing his air conditioning unit's filter, and repairing his lawnmower. *Id*. at 55–58. In sum, if, when Johnson "gets up, [and his] blood sugar[] is pretty good, it's pretty well a normal day. But if [his] sugars are off, [he has] a hard time doing much of anything. . . . [He] can pretty well handle driving if [his] sugar is [high]." (Doc. 6-3 at 58).[3] Johnson is a smoker. (Doc. 6-3 at 50).

Johnson also testified that he has blood pressure problems, though he's not on medication to treat it. (Doc. 6-3 at 52). At his hearing, Johnson described his blood pressure problems to the ALJ:

> I've had some problems with [blood pressure]. I try to get out and walk a block in the subdivision I live in, and I passed out a couple times doing that and then I had trouble with it a lot of mornings when I got up, gotten up during that time.

(Doc. 6-3 at 52).

Finally, Johnson testified that he doesn't experience any neck pain. (Doc. 6-3 at 54).

---

[3] Johnson also testified that he can "be in control [of his blood sugar] the rest of the day", if it's running low in the morning and he eats and then delays taking his insulin shot for a little while. (Doc. 6-3 at 60). If he does this, then "everything's pretty good." *Id*.

4

### B. Medical Records

As noted in his Response (Doc. 8 at 8), Johnson's medical records aren't voluminous. On December 2, 2018, Johnson was admitted to Huntsville Hospital. (Doc. 6-8 at 21). Records from that visit indicate that Johnson had been experiencing dizzy spells the two previous months, and that, after taking his insulin, he passed out and awoke with nausea and vomiting. *Id*. At the time, Johnson said that he didn't have any chest pain, shortness of breath or focal neuro[4] deficits. *Id*.

Dr. Helen Alvarez, MD, examined Johnson on February 16, 2019. During his visit, he reported that his memory was "getting terrible," that he couldn't "remember things he used to know," that it was harder for him to work with his hands, and that he'd been getting dizzy spells and experiencing some numbness. (Doc. 6-8 at 61). Dr. Alvarez noted that Johnson had no difficulty sitting, standing, or walking. *Id*. Johnson was also very talkative, cooperative, engaged in appropriate behavior, and appeared well-nourished during the evaluation. *Id*. at 62. Ultimately, Dr. Alvarez concluded that Johnson could "perform all physical activities of [the] examination" and recommended that Johnson "seek medical attention when he has another dizzy spell." *Id*. at 66.

---

[4] Focal neuro problems are nerve, spinal cord, or brain function related. *See Focal Neurological Deficits*, MEDLINE PLUS, https://medlineplus.gov/ency/article/003191.htm (last visited 23 February 2022).

Other medical professionals that examined Johnson in 2019 found that his memory was generally intact and that he was able to maintain linear and logical conversation, (*See* Doc. 6-4 at 8), that he exhibited no evidence of diabetic complications or vertigo, (Doc. 6-4 at 9–12), that he had a somewhat limited range of motion in his shoulders, *id.*, and that he was able to understand, remember, and execute simple instructions, maintain attention, sustain concentration, persistence, and pace, adapt to changes, and interact adequately with others. *Id.* at 78.

### C. Judge Daughtry's Opinion

In the Opinion outlining his unfavorable decision, Judge Daughtry followed the sequential analysis administrative law judges are bound to apply. He first found that Johnson hadn't engaged in substantial gainful activity since August 7, 2017. (Doc. 6-3 at 21). Thereafter, he found that Johnson suffered from three severe impairments: diabetes mellitus, cervical degenerative disc disease, and major depressive disorder. *Id.* at 22. He also considered other problems that Johnson had testified about but hadn't included in his benefits application, namely Johnson's blood pressure related issues, shoulder and joint pain, and specific cognitive problems. *Id.* at 22–23. Jumping ahead, Judge Daughtry eventually found that Johnson had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with certain additional limitations. (Doc. 6-3 at 26).

In reaching this conclusion, Judge Daughtry discussed, at length, Johnson's testimony (Doc. 6-3 at 26–27); Johnson's purported cognition troubles but noting certain inconsistencies (*id*. at 28); Johnson's purported physical limitations, which supported a less than full range of medium work (*id*. at 28–29); Johnson's record with diabetes (*id.* at 29 – 30); Johnson's purported back and joint related pain (*Id*. at 30); and all other matters. *Id*. at 30–33.

## II.   LEGAL STANDARD

This Court's scope of review in Social Security matters is incredibly narrow; it's limited to reviewing whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. (internal citation and quotation marks omitted). But "[s]ubstantial evidence is *less* than a preponderance." *Meehan v. Comm'r of Soc. Sec*., Fed. Appx. 599, 601 (11th Cir. 2019) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Thus, while the Court must scrutinize the record as a whole, **the Court must affirm if the decision is supported by substantial evidence, even if the evidence**

**preponderates against the Commissioner's findings**. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Crawford v. Comm's of Soc. Sec.*, 363 F.3d 1155. 1158–59 (11th Cir. 2004) (*per curiam*)) (emphasis added); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### III. DISCUSSION

Johnson seems to raise a few issues on appeal. He first contends that Judge Daughtry didn't give his testimony "proper weight," and that this ran afoul of the Eleventh Circuit's pain standard. (Doc. 8 at 5). But, as addressed below, intermingled with and more prominent in that argument is another: that Judge Daughtry's his residual functional capacity analysis isn't supported by substantial evidence. *Id*. at 8. On this point, he says that Judge Daughtry's general statement that the medical records supported his findings wasn't sufficient *and* that Judge Daughtry cherry-picked from the record. Finally, Johnson contends that Judge Daughtry erred by finding that Johnson's descriptions of his daily activities weren't consistent with his disability allegations. (Doc. 8 at 10).

### A. Johnson's testimony-related claim fails. It amounts to a request to reweigh the evidence.

Johnson relies heavily on his hearing testimony to show that he's disabled.

> To establish a disability based on testimony of pain and other symptoms, a plaintiff must satisfy two parts of a three-part test by showing: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the

alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."

*Zuba-Ingram v. Comm'r of Soc. Sec.*, 600 Fed. App'x. 650, 656 (11th Cir. 2015) (*per curiam*) (quoting *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (*per curiam*)). When weighing the evidence, "credibility determinations are the province of the ALJ." *Id.* (cleaned up). "If the ALJ discredits a claimant's subjective testimony, the ALJ must articulate explicit and adequate reasons for doing so." *Id*. (cleaned up). "A clearly articulated credibility finding supported by record evidence will not be disturbed on appeal." *Id.* (cleaned up).

Johnson believes that Judge Daughtry shouldn't have discounted his testimony at all when considering whether he was disabled.[5] Johnson's argument on this issue can be found on pages 5–10 of his Response. Briefly, it includes: (1) citations to relevant case law for credibility determinations (Doc. 8 at 5–6); (2) a recitation of some of Johnson's medical records and hearing testimony (*id*. at 6–7);

---

[5] The Court could've, but has declined to find, that Johnson abandoned this claim on appeal. He failed to plainly and prominently raise the issue. *See Ajomale v. Quicken Loans, Inc.*, 860 Fed. App'x. 670, 673 (11th Cir. 2021) (finding abandonment where appellant didn't plainly and prominently address issue at summary judgment); *Zuba-Ingram*, 600 Fed. App'x. at 656 (finding abandonment for failing to plainly and prominently raise issue on Social Security appeal); *Wright v. Kijakazi*, 2021 WL 4315800, at *3–4 (N.D. Ala. Sept. 22, 2021) (Social Security appeal); *Russell v. Saul*, 2020 WL 7025074, at *3 n.1 (N.D. Ala. Nov. 30, 2020) (same); *Proctor v. Soc. Sec. Admin., Comm'r*, 2020 WL 805947, at *4 (N.D. Ala. Feb. 18, 2020), *appeal dismissed sub nom. Proctor v. Comm'r, Soc. Sec. Admin.*, 2020 WL 3066702 (11th Cir. Apr. 28, 2020) (same) ("This sort of perfunctory identification of issues gives neither the Commissioner nor the court any guidance about [claimant's] argument aside from the fact that she asserts the existence of an error."); *Morgan v. Soc. Sec. Admin., Comm'r*, 2019 WL 1466259, at *3 (N.D. Ala. Apr. 3, 2019) (same).

(3) an exposition of Judge Daughtry's RFC finding (*id.* at 7); and (4) contentions that Judge Daughtry didn't "properly consider the evidence in its entirety when making his [RFC] determination," and that Judge Daughtry "mischaracterized or simply ignored" the record when determining Johnson's RFC. *Id.* at 8. Thereafter, Johnson continues to focus entirely on RFC-based contentions. (*See* Doc. 8 at 9–10).

Substantively, Johnson's argument here is just a request for the Court to reweigh the evidence–namely, his testimony–and find it totally controlling. The Court can't and won't do that. *Winschel v. Commissioner of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir 2009)). The Court addresses Judge Daughtry's RFC analysis *infra*.

### B. Judge Daughtry's residual functional capacity finding is supported by substantial evidence.

Judge Daughtry found that Johnson had the residual functional capacity to perform medium work with certain limitations. (Doc. 6-3 at 26). Johnson contests this without much substance. Johnson takes issue with Judge Daughtry's residual functional capacity analysis for about three pages in his Opposition. (*See* Doc. 8 at 7–10). Most of those pages are simply full of conclusory statements. Nothing plainly and prominently challenges Judge Daughtry's residual functional capacity analysis. They appear–with some edits–below:

> The residual functional capacity determined by the ALJ is contrary to substantial evidence of record. The ALJ failed to properly consider the

evidence in its entirety when making his determination. . . .[6] The ALJ identified certain snapshots of the record, [sic] when considered in isolation, could be construed as being consistent with the Plaintiff's allegations. However, the ALJ mischaracterized or simply ignored evidence that undermines his conclusion that the Plaintiff can perform a range of medium work. . . . The ALJ failed to properly consider the evidence which contains objective medical evidence which is consistent with and could reasonably cause the symptoms and limitations alleged by the Plaintiff. The ALJ noted the diagnostic findings in this case fit the profile of a person who is capable of performing less than the full range of medium work. However, he fails to specifically identify the evidence upon which he relies to support his rationale.[7] . . . The record indicates that the ALJ did not properly consider all of the Plaintiff's medical records when making his determination. He failed to consider the significance of the objective findings which undermine his determination that the Plaintiff can perform a range of medium work. . . . The evidence does not provide substantial evidence to support the ALJ's determination that the Plaintiff has the residual functional capacity to perform a range of medium work. It demonstrates the combined effects of the Plaintiff's severe physical impairments is contrary to the ability to perform work at the medium level of exertion.

(Doc. 8 at 7–10) (cleaned up).

The argument Johnson actually presented merely amounts to a request to re-weigh the evidence and find in his favor. As noted above, the Court can't and won't do that. *See Winschel*, 631 F.3d at 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir 2009)). Instead, the Court finds that

---

[6] The immediately following sentence reads, "He [Judge Daughtry] generally stated the evidence pertaining to the Plaintiff's impairments support his finding that the plaintiff is capable of performing a range of medium work." As addressed below, Judge Daughtry's analysis wasn't as conclusory as this sentence suggests. He provided a thorough analysis of the medical records and testimony in this case and explained how they supported his finding. (*See* Doc. 6-3 at 27–30).

[7] In accordance with note 6, *supra*, Judge Daughtry's opinion contradicts this bald conclusion.

Judge Daughtry thoroughly reviewed the record evidence in this case, relying upon Johnson's Function Report and testimony, (Doc. 6-3 at 26–27), Johnson's mental status exams, *id.* at 27, Johnson's 2018 admission to Huntsville Hospital, *id.* at 27–28, his consultative exams from 2019, *id.* at 28–29, that he re-reviewed those same records, *id.* at 29, and then explained precisely how Johnson's testimony conflicted with the objective medical records. *Id*. at 30–33. Those conclusions are more than supported by substantial evidence.

### C. Johnson's "daily activities" claim fails.

Johnson also contends that Judge Daughtry "erred in his evaluation of [his] daily activities" because he found that they weren't consistent with his allegations of complete disability. (Doc. 8 at 10). Specifically, Johnson argues that how Judge Daughtry described his daily activities didn't reflect his actual limitations. Therefore, he contends, Judge Daughtry didn't support his analysis by substantial evidence. *Id*. at 12. The Court disagrees.

Judge Daughtry's detailed treatment of Johnson's account of his daily activities (and his limitations) can be found on page 27 of Doc. 6-3. It accurately summarizes Johnson's account of his daily activities and the things he's able to do. And Judge Daughtry found that account credible to an extent. And he supports those portions which he found incredible with substantial evidence.

In short, there's nothing inconsistent about Judge Daughtry's characterization of Johnson's testimony about his daily activities and ability to perform them. Judge Daughtry's findings here were explicit and supported by citations to specific evidence that provided a reasonable basis for partially rejecting Johnson's testimony. And that's all that was required. *See Chambers v. Astrue*, 2013 WL 486307, at *36 (N.D. Ga. January 11, 2013) (collecting authorities).

## CONCLUSION

Judge Daughtry's decision is **AFFIRMED** and Johnson's petition is **DENIED**. The Clerk of Court is directed to **CLOSE** the case.

**DONE** and **ORDERED** this March 3, 2022.

_____

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE